The next case this morning is Cline v. Sunoco, No. 227018. Counsel, you may proceed. Good morning, Your Honors, and may it please the Court. Paul Clement for the Appellants. This case has a long and tortured appellate procedural history unlike any I have ever seen. I'm glad we have common ground on that. The root causes of this problem are twofold. First, the District Court has never entered a valid Rule 58 judgment. The one and only Rule 58 judgment that is ever issued in this case was rejected by this Court in the first appeal as inadequate and non-final. Did we actually say that? Or did we say, Mr. Appellant, you have the duty to establish jurisdiction, you're telling us there's no final order, have a nice day? No, in the first appeal, this Court dismissed the appeal definitively. It was in the second and the third appeals that the dismissal was based on the ground that we hadn't carried our burden. I'm sorry, go ahead. And so I think that is a clear signal, and I don't really think there can be any dispute that the first and only Rule 58 judgment in this case was premature, inadequate, however you want to conceptualize it. That's not what we said. All we said was it's not final. We didn't say anything about whether it was a proper Rule 58 motion. There wasn't any question about that. The question was whether it was final, and we said it's not final. But with respect, Your Honor. You phrased your statement in terms of that we had said this is an inadequate Rule 58 judgment. We just said it's not final. The question was finality. But the whole point of a Rule 58 judgment is to signal finality to the potential appellant. The whole point is to signal the time starts running on the decision. You have a separate, the idea is a separate judgment, a separate Rule 58 judgment. Exactly. That starts the time running, which you understood and you filed your appeal. Exactly. And the point of that, the whole point of it is the Supreme Court has explained in Banker's Trust, as the advisory committee rules, is that the appellant is not supposed to have to guess. Right. They're supposed to have a clear signal. And we took that clear signal. And there was a Rule 58 judgment, and you did appeal, and there wasn't any question about the timing of the appeal. The question was finality. Exactly. That's all I was saying. Exactly. But this Court said it wasn't final. We have never had another Rule 58 motion. And I would submit that when a district court issues a Rule 58 judgment, which is supposed to be the final judgment, and the Court of Appeals dismisses the appeal as non-final, it is incumbent on the district court judge, if asked, as it was in this case, to issue a new Rule 58 judgment. And the denial of that request is a final appealable order, and that's one of the two bases we are here for appeal. The second root cause of the problem here is that at no point in the Rule 58 judgment or in the subsequent orders has the district court entered an order that is final for purposes of Stray and Cook. And there are two problems in our view with the orders that have been issued. Plan of Allocation Order, which we did try to appeal in the second appeal, really has two basic flaws in terms of Stray and Cook. One is that it does not allocate the damages specifically to each individual class members for approximately 10% of the damages. So that's about $11 million. And the problem, and it's maybe an understandable oversight, is that the Plan of Allocation Order works reasonably well for all but two of the BA numbers, or account numbers, that were specified in the Plan of Allocation. Because with respect to all but two, there's a one-to-one correspondence between a class member and an account member. So really what you want to do is to try to get before this court, whether or not, as you've just described, the Plan of Allocation is adequate, correct, whatever nice word you want to put on it, under Stray. That's what you wanted to do, right? That is correct, Your Honor. I would say what we desperately want to do, actually, is get to an appeal on the merits. But first, let's, yeah. In order to get there, we have to have a final order that we can appeal. Now, we were frustrated last time around, and I'm happy to talk about that, but in many respects, that's water over the dam, or under the bridge, or whatever the phrase is. I think what we've tried to do, and I hope we've succeeded, is to tee up the Stray and the Cook order issues, rather, through two appealable orders that are related. The denial of the Rule 60B relief, and the denial of the Rule 58 motion for a new final judgment under Rule 58. And the sole ground that we believe that the district court rejected those two motions for relief is that he thinks his work is already done. He thinks that the plan of allocation order is sufficient under Stray and Cook, and he thinks that he's already issued a valid Rule 58 judgment. We think he's wrong on all of the above. So what about a Rule 54B approach? We have not approached him on Rule 54B, because we don't think that, I mean, the case, in his view, is done as to everybody. So you wouldn't have any problem with his saying, yes, it's final. Go ahead and take it up, bits and pieces. We would be happy with anything that he said, this is final, take it up. What he has said is, it was already final back in the day. I mean, it's really final. He said it's final several times, yes. Yes, but he's wrong about that under this court's cases. Well, maybe it's for us to decide if he's wrong about that. And that's really the problem here. It seems that the appellant has gotten in front of the case to say, let me tell the court what the law is. And I, we, the appellant, think it is not final, does not satisfy Stray, instead of saying, I want to appeal, and here's how I can do it. But here's the problem, Your Honor. This court's decision in Stray itself makes clear that the requirements of Stray and Cook go to finality. They don't go to the merits. So that's why I think the first, in the first earlier appeals, we had a legitimate dilemma. Because it was our good faith belief that the district court had not issued a final order under Stray. And again, I don't necessarily want to go over kind of old business. But I don't think this court wants to create a dynamic where a lawyer who, in good faith, believes there's a Stray problem with the order, is supposed to suppress that view and not share it with the court. And I fear that that's something like the incentive that the dismissal of the second and third order appeals have created. But I think our appeal here, whatever the case about those earlier appeals, this appeal solves the problem. Because a denial of a Rule 60B motion on the grounds that the district court thinks the case is already final is an appealable order. A denial of a motion for, under Rule 58D, for a Rule 58 motion is appealable. Those are both... But you can't separate the Rule 60B from the underlying judgment, can you? Don't you have to have both of them final? No, with all due respect. And the opposing counsel differs with you on that, right? Absolutely. But we think they are wrong. We think we are right. So you think you could have just any kind of thing floating out there, unfinal, final, whatever, file a Rule 60B, and the Rule 60B in and of itself, in its own little capsule, could come up here on appeal? That's right, Your Honor. If it's a denial, if it's a grant, this court's case is safe. What case would you rely on to get us there? I would say the Johnson case, Johnson against Spencer, says that. And I also think, more generally, this court doesn't have one of these cases directly on point, but at page 21 of our opening brief, we cite three or four cases from other circuits that deal within the context of the Rule 58 denial context. Coming back to the Rule 60B-6, so if we agree with you that the plan of allocation order was not final, then what you're saying is the denial of the Rule 60B-6 motion is nonetheless final. Yes. That's your position. And it comes up, and you would say the basis for the denial is final appealable order, but the basis for the denial was wrong because the district court denied it on the grounds that he had already issued an adequate order that complied with SRAE. So you would say you were wrong about that. You send it back. I assume what would happen is he would solve this problem because, as we tried to make clear, we don't think this is an insuperable problem. We just think it needs to be fixed. Well, let me ask you about that. In your view, what must the district court do to make the plan of allocation order comply with Cook and SRAE? So the district court must do two things. First, with respect to the two undivided BA account numbers, the district court must provide directions to the special master. This is how you deal with the fact that those BA numbers have a couple of hundred different class members in them. And it may be as simple as simply saying you've got to track down, essentially disaggregate it down to the level of the individual account numbers and then come up with an allocation sort of within that account that would sort of mimic what has already been done. Isn't that implicit in the duties of the administrator to do just that? I mean, you've got the money in the pot, and it's been sent to what you thought were owners of these wells. I mean, it can't be too terribly hard to find some of them, at least, who are tied to those wells through ownership. Well, two things, Your Honor. Don't underestimate how hard it is to find anybody. Because the reason these are in this undivided account. I've worked on oil cases before. I understand the pain. Yes. No. And the reason these are in the undivided account is because, essentially, we have nothing. We don't have a name. We don't have an address. These are probably people who. Right. So what I'm saying is the administrator would dig into this maybe more carefully and more thoroughly than you all did in an attempt to find an owner. And to say, then, that the district court is wrong here because it didn't give us a formula, that's impossible here, isn't it? No. A formula? No. Sort of like go out and do the best you can, and if you find somebody, pay them their allotted share. And even that would be fine. And, you know, certainly after our last experience, we're not going to tell this court that that's not good enough for Stratt. But what the district court did here is the district court literally says in his order, you know, we've got a BA account, and so each class member is already allocated. And I don't know if he just didn't understand the unique problem with the undivided accounts. So all he has to do is essentially provide a plan for the undivided accounts, and that'll solve one of the two problems. The other problem is even easier solved. And I hate to sound so pedantic about this, but in the plan of allocation order, what the district court did is specifically reserve judgment on what to do about the unclaimed funds, and then indicate what his inclination was. But I thought you'd sort of given up on that as a problem here. No. What we said, and I invite you to go back and look at it, what we said is the combination of the denial of the motion for, you know, post-trial relief, and the footnote 10 in that denial, if combined with the plan of allocation order, if you construed those essentially as the latter as modifying and changing the former, then you would solve the second problem. But do you need to solve the second problem to succeed on this appeal? No. The quote I have, and maybe it is a bit out of context, but that Sunoco said previously, is it believes that the district court has adequately provided for disposition of residual unclaimed funds. Now, I don't know that that ties your hands at this point or not, but that is what was said. Right. But all in the context of you have to, like, combine the two orders together, and if Rule 58 says anything. Well, we still have those same two orders. We can still combine them. I mean, your position should still be the same. We don't have any new orders to the district court than I do. Let me say this and then sit down because I want to save some time for rebuttal. I don't think we can just waive that because it goes to jurisdiction, and if we're changing position, then so be it, because I think my position now is the better one. But we don't need that to win the case. Thank you, Your Honors. May it please the court. Russell Post on behalf of the athlete. The court can affirm the denial of Rule 60B relief here based on three distinct paths, and all of those paths are valid. Sunoco must overcome all three in order to secure reversal. First, the court can hold and should hold that the district court did not abuse its discretion in denying Rule 60B relief from the bench on the ground that Sunoco was not entitled to re-argue points that it had previously argued to the district court and had forfeited. That ruling would not evade the finality question. It would recognize that the district court had made a determination of finality, that Sunoco failed to effectively appeal in the first instance, and the district court was not required to revisit it. Second, the court can hold that the district court correctly ruled that its judgment was final because the substance and objective intent of its plan of allocation order made evident that the court was finished with its work and had satisfied the stray test. It certainly did seem to think it was finished with its work. Certainly thought so, Your Honor. But I sense that even you all were at least thinking that perhaps there were some flaws with the prior order. That's actually not true. At some point, you suggested the same approach that they're suggesting now as far as dealing with the first issue. No, actually, Your Honor, that's not exactly right. To be precise about our position, in the very first appeal, the premature appeal that was taken after the judgment order, before the plan of allocation had been issued, when the district court had indicated he intended to issue a plan of allocation, we agreed that the appeal was premature. After the district court issued the plan of allocation, we took the position that that order was sufficient to establish a final judgment under stray and that there was nothing else that the district court needed to do. And what we spelled out in our papers is the fact that the judgment administrator can, in a straightforward mechanical way, apply the principles of the plan to determine all of the recoveries, including the recovery to these undivided plans. And I want to speak to this issue. It can do that, but it shouldn't. Do we know that that's what the administrator is going to do? We do, Your Honor, and that is the fatal fallacy in the fundamental argument that Sunoco is making here. Their assumption is that the judgment administrator has not been tasked with this responsibility and given the information to fulfill it, and that's wrong. And I invite you to look at paragraph 3 of the plan of allocation order that appears on page 96 of the appendix. And I'll quote for the court. The district court said the administrator is, quote, responsible for applying the mathematical principles established in the plan of allocation to ascertain the precise amounts of the net class award allocable to each class member. That authority extended to every class member, including the class members, whose interests are contained in the undivided accounts. There is no mystery about what the claimants are entitled to under the undivided accounts. The plan of allocation sets forth a straightforward plan to determine the fractional share of every class member as related to the net class award. Well, how does it do that for the undivided accounts? It does that, Your Honor, in two steps. And one step has already been quantified. It goes beyond what STRAE requires, beyond the formula, and actually quantifies the awards. So let me take this in two steps. First, the plan sets out a formula by which the fractional share of each class member can be determined by looking at that class member's individual damages as a percentage of the total class award. Second, going beyond what STRAE required, the plan attaches an exhibit that actually quantifies that calculation for 621 pages of itemized account numbers. It is true that two of those are the undivided accounts, but the point is that that 621-page exhibit is not required by STRAE. It goes above and beyond. It actually does the calculation of the formula. And so with respect to the undivided accounts, it reduces to a specific sum the value of the undivided accounts. Well, what evidence is there that the district judge understood that the two accounts, the undivided accounts with the BA number, really stood in a different position than everything else? Your Honor, this was debated ad nauseam through the entire litigation. There were numerous arguments about these undivided accounts, and I would point the court to, in particular, the court said at page 232 of the joint appendix, this is at the hearing on the Rule 60 motion, Sunoco is making these same arguments over and over and over again. And in the plan of allocation order, the district judge specifically referred to plaintiff's exhibit 454, which was the calculation that itemized every late payment, not late payments just for each claimant, every individual late payment. But it didn't narrow down to these undivided accounts, did it? Your Honor, the plan requires the application of that methodology to every late payment. That is the formula that STRAE requires. The exhibit, the 621-page exhibit, then actually applies the methodology, going beyond STRAE, with respect to all of the accounts. So with respect to the undivided account, there's only one additional step that needs to be taken, and the district court in paragraph 3 has ordered the judge to take it. And it is within the undivided accounts to determine what is the fractional share of a particular late payment to that undivided account. So you're relying on the administrator is responsible for applying the mathematical principles established? Absolutely, Your Honor. That's very compatible with what was done in the Cook decision that this court held to be sufficient to satisfy the STRAE test for finality. And it's literally one additional math calculation of undisputed numbers. It is one additional fraction to be applied to the amount that's already been quantified with respect to the undivided account. And you know then the interest. No, first you have to know who the owners are and their shares. I mean, you might have a 164th or you might have a 4th, and it's a big difference, and so you'd have to factor that in. That's absolutely right, Your Honor. And that's true in virtually every class action at the distribution phase. And that's why in the Supreme Court's decisions in Boeing, in this court's decisions in Cook, those claims administrators, settlement administrators, were given the authority to determine who is entitled to claim. And so it's absolutely the case that a class member will have to prove they're entitled to participate. But that's not a matter of finality. That's a matter of distribution. And this is no different than the way the money is currently held. Remember, all of these funds in these undivided accounts relate to principal payments that have already been paid to state unclaimed property funds. And those funds have that same data. And so all that will happen if the judgment administrator can't identify an individual at the time of distribution, that line item that quantifies the interest owed on a late payment will be paid to the unclaimed property fund and linked to precisely the same data in the unclaimed property fund. So when a claimant goes to claim, they will get principal and interest. Can I just ask you whether, isn't Sunoco arguing that that's what should have been in the, what you just said should have been in the plan of allocation order? I think that is what Sunoco is arguing, Your Honor. And I think Sunoco is arguing nothing else. That is, at the end of the day, the only argument, is that they think the plan doesn't actually explicitly state sufficiently what the judgment administrator must do. And I submit that Paragraph 2 and Paragraph 3 of the plan do give precisely that instruction. But let me take a step back and say this falls into the second argument about finality, which is that the district judge made abundantly clear that he had complied with the requirements of Stray and Cook. The plan of allocation includes headings that are drawn specifically from the test for Stray and Cook, what he was required to do. He made clear to the parties that he believed he was done. If you look at the briefing, you will see. The trouble is that in the actual judgment, he said he anticipated sending the unclaimed funds to the state. And then he later says, basically, that's not what I said. It provides for the distribution of funds to the state unclaimed property. It doesn't. It says he anticipates. It's very, very clear. Those are two different things. So the court itself was inconsistent, and it never amended or clarified in the actual judgment what it said it intended. And that's a problem. Well, Your Honor, I don't think that is a problem. I think, first of all, that's obviously dealing with something distinct from a division for allocation. That's dealing with the disposition of the unclaimed funds. And I think the court expressing its intention is sufficient under Stray. Stray requires that the court set forth the principles that will guide disposition. I think Stray requires you have to at least say this is where it's going. But you can retain discretion later to change your mind about that based on how things play out. Your Honor. But that's not what the court did here. And it really is a simple fix, and I don't quite understand why the court didn't just fix it. Well, Your Honor. And why you didn't advocate for that. And we would be here at least on that particular part of it. Your Honor, I think it's just. If the word anticipates, that's the problem. I think it's a semantic difference. If the court has said in Cook it is sufficient for a district court to say it is reserving discretion over that decision once it knows the unclaimed funds amount, I don't see any material difference between a district court saying I anticipate what I will do with these unclaimed funds. It's two different things. I anticipate I might do this. And then what he said is I did this. But then he didn't amend it to say so. Your Honor, I think that. It's not just a technicality. I mean, it is what gives us a final judgment. Your Honor, I think it is a semantic difference. I think what the court said was sufficient. And I think Sunoco. What if we disagree with you? What's the answer? What if we disagree with you and we send it back? What is the answer? And can you address the Rule 58 issue? Yes, Your Honor. I don't need it for a separate. I certainly can. First of all, the answer, if you disagree with me, that that's a semantic distinction, is that in the first appeal, Sunoco withdrew this argument. Sunoco acknowledged that the clarification given in the post-judgment order made it clear that the district court's intentions were adequate to achieve finality. And this court relied on that concession. I get it. In its opinion. And so I think that's sufficient for that purpose. But we don't have a, that's not really a waiver. There's no estoppel. Let's assume that that's not binding. And related to that then, Your Honor, is my point that on its face, the district court announced that he had complied with Stray and Cook. And that's all that's required for finality. If they thought that was incorrect. Can you address my question, which is what happens if it goes back? What happens if it goes back? If we disagree with you, what happens if it goes back? Is there a need for a separate Rule 58 judgment? Because that seems to be a big part of the brief. There is definitely not a need for a separate Rule 58 judgment. So let me speak to that question directly. Rule 58 has nothing to do with finality. It has only to do with the timing of a notice of appeal. When a party prosecutes an appeal without awaiting a Rule 58 judgment, the Supreme Court has made clear it has waived any right to a separate document judgment. When the plan of allocation was entered, it made the judgment final. And the court's determination... Did the plan of allocation refer back to the judgment? I didn't see that it did. I believe, Your Honor, the plan of allocation... Did the court bring it into the judgment? How did it make it final? How did it become a part of the judgment? The court issued its order initially indicating that it was granting judgment to the class. And when it issued that order, it specifically stated that it would both enter final judgment under Rule 58 once it had updated damages numbers, and it would then enter a plan of allocation order. And then it got the updated numbers, and it entered the Rule 58 separate document judgment. Okay. Subsequently, it entered the plan of allocation order that it had foreshadowed. I think that order referred to the judgment, and that made the judgment final under strike. I didn't see that. And if they didn't agree, they had an obligation to appeal and challenge it on the merits. Okay. So what would be... If we were to send it back on one or the other of these grounds, and the district court makes changes to make it final, what would happen with that? Would it need to enter a separate Rule 58 judgment? Could it amend the existing judgment? Could it amend the plan? What would it do? Well, Your Honor, if the court determined that the judgment was not final and that it was subject to further revision, notwithstanding the Rule 60 barrier, and I want to speak to that before I sit down, then the district court, I'm sure, would faithfully respond to whatever instructions this court gave it. You would still not need a new Rule 58 judgment if Sunoco was prepared to move forward immediately once it had a judgment that it considers to be satisfactory. But Sunoco is not entitled to a judgment that it considers to be satisfactory. And that's the Rule 60 point that I don't want to allow to be elapsed here, because the district court determined this judgment was final. And they made the same arguments at the time of the plan of allocation that they are making today. And the district court rejected them. Sunoco prosecuted its appeal. This court dismissed that appeal. That determination is law of the case. And the district court was entitled to determine under Rule 60 that Sunoco did not have a right to bring back the same arguments it had previously rejected in order to deal with the consequences of its own deliberate decisions about how it unsuccessfully prosecuted the first appeal. The judgment's final, and it's enforceable. Could I ask a question? Of course, Your Honor. No, I'm asking him. He's the presiding judge. Of course. Thank you. Thank you. That's very kind. Why won't you take the money? We will take the money. I thought there was pleading in the reply brief that they're trying to give you the money, and you resist that. You do not want it paid into the court's registry. Your Honor, the execution history of this case has the same long and tortured path that the rest of the litigation has. I won't burden you with the details. I will say that in the final analysis, $161 million has been placed into escrow in a fund under the control of the judgment administrator. The district court is now considering the fee applications and class-wide expenses and class representative awards. Once that ruling is made after a hearing that was had in late February, then the case will be ripe for distribution. The money is there, and the judgment administrator will be ready to proceed. One more question. Would a new Rule 58 judgment make any difference to the parties as far as interest, either post-judgment interest? No, Your Honor. It wouldn't make any difference? It would not make any difference. This judgment is final, and interest is what it has been since the day it became final. Okay. Thank you. Thank you. We have some rebuttal time. Thank you, Your Honor. Just a few quick points in rebuttal. First, Judge Matheson, you asked, what do we know about what the judge was actually thinking about this? It's in the plan allocation order. It's in paragraph 2. It's on joint appendix page 96. It's right before what my friend was quoting about the math that the judgment administrator is supposed to do, and the district court makes clear that the math is easy because, quote, for each class member expressed in lay's declaration by the net class award in order to arrive at the exact dollar amount that each class member shall be paid. That is simply not true with respect to the undivided accounts. It is absolutely true with respect to the divided accounts. That is the fundamental reason that it doesn't comply with STRAE. And did anybody object when they saw this plan and it did not talk about undivided accounts? Yes. We objected to a fairly well, and I don't think my friend would disagree with that. On this very point. On this very point. We have been focused like a laser beam on this very point, and it's what got us in so much trouble with the second and third appeals because we really continue to think that there wasn't a final judgment. Just on, Judge Moritz, your question about Rule 58, we think it's incredibly important that the judge enter that because I don't want another party to have to go through what we've gone through. And I would say this. The courts have been clear that while a Rule 58 judgment is not necessary, if what the district court has done is actually a final judgment, I think it is necessary before the appellant loses their rights. And in all events, in the same cases where the court, like look at Banker's Trust Supreme Court case, when the court has said that it's not necessary to have the Rule 58 judgment, they've also at the same time kind of worried and stressed that it's still the best practice to always have a Rule 58 judgment. And I think that's exactly the message that you should communicate to the district court judge that you fix these errors and then put it all in a Rule 58 judgment. We'll know exactly that there's 30 days to appeal from that, and nobody will have to guess. Thank you, Your Honors. Thank you, Counsel. Well, we appreciate these arguments this morning. The case will be submitted and counsel are excused.